is 24-28-65 and 24-29-28 UMB Bank v. Bristol-Myers Squibb. Thank you. Thank you. May it please the Court. I'd like to focus on two issues warranting reversal. First, suppose a defect in a trustee's appointment do not affect subject matter jurisdiction. This Court's decision in Doe v. Hochul makes clear that when it comes to the historically grounded theories of representative standing, traditional things like trustees, guardians, and the like, Article III is satisfied if the represented parties or beneficiaries have the three elements of standing. And here it's undisputed that the CVR holders have all those. They have injury in fact to the tune of $6.4 billion caused by the defendant, and that would be remedied by relief in this case. And second, any defect in appointment was resolved before the suit was filed under New York law, rendering UMB the trustee even before the suit was filed. Do you want to talk to us, as long as you're there, about the effect of the latest ruling from the district court in the parallel litigation? Yes, Your Honor. It doesn't have any effect on, in terms of this case, whether or not this case would be moot, and that's because it's well-established that the filing and even resolution, as long as it isn't a final judgment of a backup suit in cases affirmed on appeal, doesn't affect the jurisdiction of the Court of Appeals. The case would be PISAC v. Dykes Corporation, 265F4. As a practical matter, what would happen if we were to remand this case and reinstate it, and we had the original case and the later case proceeding on what I believe to be the same claims? Yeah. So they're not exactly all the same claims, but I think the most efficient way to handle it would be to consolidate the two cases. But that would be something that would be in the discretion of the district court, whether to stay one or consolidate the two. But to have a full case before it and make sure that it's eliminated any conceivable defects would probably be much more efficient just to consolidate the two, and therefore you have everything before a single court in a single case. Please continue. What's the point of consolidation when, in essence, it's the same case? It's just refiled this time with the proper vote of the majority holders. You know, it would be one thing if it was a slightly different case, but it's the same case because it was dismissed without prejudice and you just refiled it. So I guess I'm still stuck on the same question Judge Merriam posed to you, which is I get that it's technically not moved, but why isn't it practically moved? Yeah. And I think it's because the cases aren't identical in every respect. Resolving issues that are before this court in this case would have an impact on that second case. For example, in this case, if the court were to agree with us that there was a contractual ratification of the appointment, that would eliminate a lot of the arguments in the second case, for example. Not in this case, but in the second case, Bristol Myers has argued that the notice given was defective because we were not yet trustee. But in their brief, they said that if we were to agree, in essence, with what the district, with your argument, that that goes away. Well, certainly, if the court. So there's no notice issue in the second case, is there? I suppose the notice issue needs to be resolved. I think that in the second case, the notice issue needs to be resolved. But if this Court were to agree with us on contractual ratification here, that BMS was the trustee before this suit was filed, then there wouldn't be a question of notice because BMS was also trustee at the time any notice was given. And there's a host, and frankly, this case is. . . I thought the notice was an alternative argument. In other words, your opponents are saying if, even if you find that the trustee was appointed legitimately or properly, then there was no notice. So you said it's a backup issue, right, an alternative argument. Yes. Oh, I'm sorry. I think I confused two issues. There's one issue, which is the cross-appeal issue here, which is what I believe Your Honor is referring to. But there's also an issue in the other case, which is there is a requirement of notice of default, as you know. And there's an argument in that case that the notice of default has to come from the trustee. And if we became the trustee later on, upon the reconfirmation, then the notice of default we gave was invalid because we weren't trustee at the time the notice of default was given. But we can't issue a ruling in this case in the hopes that it will help people out in a future case. Of course not, Your Honor. But the only question is, is it moot? And is there good reason for this Court to continue the course? And there's good reason for the. . . It's not moot, as I think we all agree. And there's really good reason to continue the course and make the decision in this case and at least resolve the subject matter jurisdiction because it has that potential to resolve a lot of issues in the second case that would be a problem or could be a problem if we did not get a remand here. In the district court in this case, there was a menu of reasons why you argued any flaws in the trustee appointment. A, they didn't go to subject matter jurisdiction, but B, they weren't really problems, right? And one of them was that they're cured. They're cured by the subsequent vote and basically the argument that carried the day in the second litigation. Am I right in understanding that you did not press that argument in this appeal so that we're not asked in this appeal to consider whether the reason there's not a problem is that, for example, this isn't about subject matter jurisdiction. It's about a problem that can be fixed, and it was fixed. We can't hold that here. That can't be our rationale here because you didn't press the argument? No, that's incorrect. If the Court were to turn to page 33 of our brief, the second paragraph, it says that once Bristol-Myers raised its objection, a majority of beneficial CBR holders obtained proxies from DTC reconfirming. And then it says, under this Court's precedent, that cured any contractual defect in appointment. The district court refused to consider that because it thought it was an Article III issue, which it was not. And so we've specifically raised that in the last sentences. Because any putative defect in UMB's appointment here has nothing to do with Article III or jurisdiction, that ruling cannot stand. But that's a different argument. That's the argument that this is a contractual problem, not an Article III problem, as opposed to what I think Judge Robinson is asking about is the cure argument. Yes. This is the cure argument because it says. Right. It's mentioned in the context of the argument about whether we should conceive of this alleged problem with the appointment as an Article III problem or a contractual problem. No, Your Honor. It's under the heading, reversal must follow. And it's that this is saying that the result. Reversal must follow. Hang on a second. Let's all look at it together. Reversal must follow because the district court's decision rests on the erroneous conflation of contractual authority in Article III standing. Right. And the next sentence is, once that error is corrected, the decision must fall on ground after ground. And the first ground is confirmation. The second ground is waiver for a fraternal ratification. And the third is that the defense was raised in a timely fashion. But if it doesn't go to subject matter jurisdiction, it should have been raised at the case's outset under Appelstein, and it was not. In fact, the particular defect identified that we're talking about here, which is the failure to get DTC authorization, that wasn't even raised by answer. So it is as untimely as untimely can be. So I think the fundamental question, though, is the question. I see I'm running into my rebuttal time, if I may continue from over there. No, no. We're not taking your rebuttal time. Okay. All right. Thank you. But the fundamental question is, was this improper to, in effect, make us start all over again on a different timeline because this was a question of jurisdiction, or did it simply go to a question of authority? Right. I mean, this is the Appelstein comment, right? Like, it doesn't make sense to send them out to go through all these shenanigans and file a new suit when they can just fix the problem and we can move forward with the case. Exactly. And that's not subject matter jurisdiction. That's exactly what you'd expect to do because it's just a question of capacity. Doe v. Hochul recognized that. The Article III standing, whether the case or controversy requirement is satisfied, is all about the represented parties, whether they have satisfied the three requirements of state law. It's interesting. When you're talking about the represented parties, you're referring to the beneficiaries, essentially, of the trust protection. Why isn't the argument that the trustee and the trust are legally, under New York law, distinct things, and while the trustee is the one who's supposed to bring the action, and we know under RACER that, like, naming the trust wrongly isn't going to be fatal? And, I mean, why isn't the trust the sort of party withstanding and who the trustee is is the capacity question that we're... It wouldn't make a difference because the whole question here is, all right, do we make a mistake in naming UMB as opposed to iniquity? And the question of who was the party to represent the real party in interest, that isn't a standing question. Right. And so long as you have the injury in fact, and either the trust has it or the beneficiaries have it.  But an injury in fact, like, you have to have someone who has experienced that injury in fact, and it's got to be someone in this case. And so I'm just... Yeah. We conceive of it as the CVR holders because in cases like Sprint, the Supreme Court lumped together all of the cases, trustees, guardians, and the like, as traditional cases where you're representing a party, a party between the representation doesn't itself have an injury in fact, but acts on behalf of somebody else. And in a real, very pragmatic sense, to who was injured? The people holding CVR bonds because they didn't get paid. Whose injury was caused by Bristol-Myers? Them. And who would get the redress? Them. Everybody else is more of a pass-through. Now, it might be for technical pleading requirements like Rule 17a. There's distinctions between when you proceed in your own name versus when you proceed in the name of the party that's going to be benefited. And that's when you might look at sort of legal fictions. Does the trustee have a, I guess, a right in the trust or something like that? But in the end, it's all pragmatically all about who is injured and who's getting redressed. And is there a case of controversy? And here there's no question we have a case of controversy. The CVR holders were injured. They're seeking redress. And the only question is who gets to represent them. So if we decide this isn't a constitutional matter, this isn't an Article III issue, the court has still found as a matter of contract law that the trustee who purported to bring this suit was not the proper party. So what would, do we then have to go through the contract arguments about waiver and ratification in order to actually finish resolving this appeal? The court wouldn't have to. It could send that back to the district court for resolution of whether or not it was fixed. For example, the reconfirmations weren't considered on the erroneous notion that that happened afterwards. But didn't the court make a determination that as a matter of fact there was no ratification here? Pardon? Didn't the court make a determination that as a matter of fact there was no ratification here?  The court determined that there wasn't a waiver at the time. But actually that is the second point that I wanted to get to is that on the district court's actual findings, there can be no real question that there was ratification. Because the district court found that Vister Myers knew that none of the signatories to the instrument were registered holders. Flat out, none. It was told. It knew that DTC was the registered holder for 99 percent of the CVRs. And it knew that there hadn't been a proxy effort. And yet it went and told, and in the district's words, it chose to defer entirely to Equinity. It said, Equinity, if you're satisfied, we're satisfied. And then it publicly proclaimed from the rooftops, UMB is the trustee. Right. That's not a ratification. I mean, it's argument now is, oh, well, we always assumed that they, you know, we didn't have, we didn't assume, we had no reason to think they hadn't gotten authority from DTC. Yeah. And I think that is not actually the argument. Because you don't see any place where they say, we thought that there was. Right. An individual proxy. We were misled. Or even any evidence that they remotely considered the possibility that there might be these individual proxies. And it's very hard to think that something that wasn't even contemplated as a possibility somehow excuses them when sophisticated counsel went back and forth in email after email, and they went and said, hey, you know what, if you're satisfied, Equinity, we are, too. And in fact, the whole correspondence makes no sense if there were some inkling sense of a proxy. For example, if you look at page 344 of the appendix, they asked Equinity for brokerage statements, sworn affidavits, that the beneficial holders were a majority. Well, if there's a proxy, there's absolutely no reason to do that, because the proxy tells you all that information on the very first page. And there's examples at 663 and 1337. The reason that they didn't, neither Equinity nor Bristol-Myers asked for proxies is because they knew there weren't proxies. They simply chose to go forward on a beneficial holders, because you had before them the two parties to this contract, Equinity and Bristol-Myers, the two parties. And the two of them agreed we're going to accept beneficial holders, and that's good enough. And you can't, there's no give back years later. And this case is a lot like the Baring Point case. Okay. I think we've got your argument on that, and we are going to get to hear from you again. Thank you, Your Honor. Yeah, let's hear from Attorney Clark. Good morning, Your Honor. May it please the Court. John Clark, Bristol-Myers Squibb. I want to start with the two questions that the panel asked. First, is this appeal, what's the impact of this decision in the second case? And the answer is the Court needs to go forward with this appeal in this case, because we've just gotten that opinion. We're evaluating it. We dispute that that was a correct application. You might appeal it. We might appeal it. We might take other action. So the second point is the Court's decision here was unquestionably correct as a matter of Article III jurisprudence. So tell me, is the legal rule that you are asserting that if a trustee brings suit in the role of the trustee for a trust, and there's a defect in the appointment of the trustee, that's a constitutional issue, even if the trust and even if the beneficiaries of the trust have a constitutionally cognizable injury? Yes, Your Honor. What I'm saying is that UMB Bank has no injury in fact in this case, as Judge Furman correctly held. Well, nobody's talking about UMB having an injury. I mean, that's a red herring. Nobody thinks UMB is injured in its own right. The question here is whether a defect in the identity of the trustee defeats a claim on behalf of these other folks who have the injury. In fact, if Equinity had brought the suit, nobody would be saying Equinity is hurt in its own interest. They would be saying they would understand that Equinity's standing rested on its role as trustee for these folks. Your Honor, if Equinity had brought the suit, Equinity as a party to the contract would have injury in fact, and Equinity would be the party if they won, which we would dispute they would. If they won, the damages would be paid to Equinity. As trustee. As trustee, but under the CVR agreement, under Section 8.2 of the CVR agreement, if you bring a case, the damages are paid to the trustee. Right, to the trustee, not to the individual. And Equinity doesn't put that money in its bank account and call it a day. That's correct. It also says, and then the trustee shall make sure it gets into the hands of the holders. But the point is that the framework for analysis of the problem is the general rule. It's Lujan versus Friends of the Earth, Article 3 standing. It is not the narrow exception. Judge Sullivan in Doe was very clear. The doctrine that UMB is relying on here is an exceptional doctrine that's narrow and only applies in very limited circumstances. Trustees representing trusts are not a question of injury in fact in all candor because the trustee has the legal right to assert the claim and has injury in fact in that way. UMB's problem is it was never appointed the trustee, and therefore it cannot even invoke that exception. If you look at the majority's opinion in the Tolley case in the Supreme Court, in fact UMB is like the plaintiff in the NYU case that Your Honor authored in which the named plaintiff was a parent who paid tuition to NYU, but she was not the party to the tuition contract and she did not have Article 3 standing. Why didn't Representative Standing work there? She was a parent of a child. They have a close relationship because the contract party was a person of majority age who could have brought the case herself. And UMB is like the mother in Reinesco, that case. They are not a party to the contract. They don't have injury in fact, and they can't invoke the holders. If a quinnity were here, it wouldn't be an Article 3 issue. We would have perhaps other defenses, but they would have injury in fact. It's also important to look at how the complaint was actually pleaded. UMB sued in its own name as solely in its capacity as the trustee, but it wasn't the trustee. But when you're suing in your capacity as a trustee, you're not suing in your own name. You're suing in a representative capacity. Correct, but they weren't the trustee. So as Justice Kavanaugh noted in the Toley case, plaintiff's invocation of cases involving guardians, receivers, and executors falls short. Plaintiffs have not been legally and contractually appointed to represent the plan. The plan in Toley was injured. If Representative Standing worked the way that my esteemed adversary represents that it worked, that would be not an Article 3 problem. But it was. The named plaintiffs in Toley did not have Article 3 standing because they hadn't been appointed to represent the plan. Well, but in Toley here there is a mechanism. The whole system assumes that someone, something, an entity will be appointed to act on behalf of the holders, right? That's the assumption. I think in Toley that was not the assumption, right? There was no sort of mechanism in place that said here we have, look, you all are not going to handle this individually. We're going to have a trustee do it. And the question is, is it the right trustee? I don't think that's true at Toley that there was an assumption that somebody would be acting as a representative and they just got the wrong ones. Well, I think there were trustees that could have brought the case in Toley as well. But these folks were not even eligible to be trustees. The plaintiffs in Toley were not sort of among the group of people who could have been named trustees, right? But they were just like UMB, a step removed from Article 3 standing. Your Honor, I'm not disputing that it is also a capacity problem. What I'm saying is Judge Furman analyzed it correctly because it goes to whether a federal court could decide this dispute. If UMB is not the trustee and BMS defeats UMB in a judgment, any holder could attack that judgment and say, that wasn't my representative. They weren't the trustee. Equinity was the trustee. And by the way, Equinity in the same suit that UMB has brought to the court's attention, Equinity has asserted cross-claims asserting the same breach of contract claim here. They've now sued BMS. So if Equinity is the trustee, and we believe it is, we believe it was never replaced, we believe this entire process was defective, then that claim has been asserted by the proper party. When you say it was never replaced, I mean, so that's, I guess, a legal fiction you're asking us to adopt. I mean, Equinity said, mic drop, we're out, have fun. They didn't, Your Honor, they didn't resign. What happened was under Section 4.10 of the CVR agreement, there's a way for a majority of the holders to replace the trustee by removing the incumbent trustee, and then the company has the right to replace, but the majority holders can't appoint a replacement. And the problem was it was not an act of the majority holders here because there were no DTC authorizations. And by the way, Your Honor, the reconfirmations can't solve that problem because of advanced magnetics, Courtland Street, you can't relate that back. That's why they didn't press that on appeal and they waived that argument. They can't use the reconfirmation process to get subject matter jurisdiction. We disagree that it's just a capacity problem. We also disagree with the portrayal of the facts in their waiver argument. What happened here was the person that was in control of the situation was UMB. UMB made a conscious choice not to approach DTC, not to get a proxy or an authorization from DTC. It's delivered an instrument that represented that each signatory, which were only beneficial owners, had been authorized to act as a holder, and that wasn't true. It was approached by DTC the day before it delivered that instrument and DTC said, do you need something from me? And they didn't respond and they never disclosed that to BMS. BMS, yes, BMS knew the signatories were beneficial owners, not registered holders, because that's the way the securities markets work. These CVRs were traded on the stock exchange and therefore they were subject to book entry registration by DTC, not through the traditional security register process. So if they knew, then why didn't they say something earlier? Why did they assume there was a proper? The instrument said that they had been authorized to act as holders. So they just accepted that without questioning? Until they knew the terms of the contract? Your Honor, as Judge Furman aptly noted in his opinion, and this captures the situation perfectly, this was a compressed 10-day period where this was delivered to BMS on December 18th. UMB was working on it for several weeks before that, but we weren't involved in that. And then questions were asked which UMB didn't answer until the 31st of December at 3 p.m. And that's when all of this business was going on. Let me ask you just a different question. And I want to be very clear that I'm not asking for an argument about Judge Furman's second opinion or most recently issued opinion on the revised or new lawsuit after the proper or not. I put proper in quotes because I understand from my question that I'm about to ask you, that it sounds like you don't think, you said you're looking at the current decision deciding whether to appeal. But from your argument, it sounds like you don't agree with it. And you think that, quote, equinity is still the proper trustee. That's right, Your Honor. But equinity is a party to the same case, and they've asserted those claims in case UMB is not the trustee. So we're evaluating what to do with that. It just came out on Monday. But that's a third lawsuit, right? No, that's the same case. Even though they intervene in the – They were named as a defendant on a declaratory judgment count, and they've asserted those claims as cross-claims if they are the trustee. I'm not familiar with that case, just Judge Furman's decision on the refiling.  So it sounds like you'll be appealing that as well. Well, I don't – I'm not saying that, Your Honor. What I'm saying is we're evaluating what to do next, but we don't think that the decision is legally correct. I'm looking at equinity's testimony in the – or statement in the proceedings below. And this notion that somehow there was an assumption or it was misleading or something that DTC wasn't involved. And equinity is very clear. They say we could have asked for a DTC vote as opposed to individual votes, but I've never actually seen it done that way. They go and say, yeah, there could be a DTC proxy, but if the holders, and the holders being the small-H vote, that's what's going into the DTC proxy anyway. And I realize you're going to say that's them, not you, but does it strain credulity to suggest that your client didn't understand exactly how this vote was being conducted? And is it challenging the finding that the – No, I understand that. And moreover, Your Honor, there are – what UMB would like the court to believe is there's only one way to get a DTC proxy, but that's not true. In fact, UMB's own actions in this action below demonstrate that's not true. While we were litigating the motion, which was briefed over an extended period of time, UMB was busy in the background, without our knowledge, collecting these re-confirmations from DTC so that they could argue that the whole motion was moot and that UMB was now the trustee. And then they presented them. After collecting them, starting like two weeks after we raised this issue with the district court, they started collecting them, and they presented them in April without disclosing them beforehand. So it's very, very possible for DTC authorizations to be obtained without the issuer's knowledge, and that's exactly what happened here. Yeah. But just – So when the court found, I take it as a fact finding, that Bristol-Myers knew that there wasn't – hadn't been a DTC proxy effort, that's a clearly erroneous finding of fact. No. A proxy effort is different than DTC authorizations. I see what you're saying. What UMB itself did was not a proxy effort. It was getting DTC's authorizations, which are in the record. You can see what they look like. Was it your contention that your clients were either assumed or believed that these small H holders were acting with DTC authorization? What – no. Our argument was that – our argument is that BMS made a mistake in understanding that this was adequate and that when we realized that it was not adequate, we immediately raised it with the district court. We didn't know – So you were never – you were never lacking in understanding about the factual scenario. What you made a mistake about – and when I say you, I mean your client – made a mistake about was the legal significance of the facts that they understood. Your Honor, I think we're completely on the same wavelength. What I am – what I'm saying is that BMS understood the facts that were in front of it. What the BMS representative witness testified in her 30B6 deposition was that we just didn't know, one way or another, if there had been a DTC authorization. Those are – that's the record. That's a factual problem again. I think what Judge Robinson is asking – I'm interested in this too – is are you saying that BMS made a factual error in not understanding what was there or a legal and interpretive error in understanding –  Both. Both. It's a combination, Your Honor. In fast-moving circumstances, without the benefit of – we've now been arguing this issue for a year. Without having that time, in a compressed period that UMB controlled, BMS did the best it could do with the facts that were in front of it. It asked Equinity, which was a transfer agent and an expert in securities markets, for Equinity's view. BMS is a pharmaceutical company. It interacts with the securities markets, but it interacts with Equinity in that role. And Equinity said, this looks okay to us, on December 31st at 3 p.m. What Equinity seems to have misapprehended, and the testimony that you pointed to shows this, is that this isn't sufficient. You can't just get beneficial owners to sign. You need DTC to authorize it. But it sounds like it wasn't just Equinity that misapprehended that. It was also – I mean, Equinity was operating from the same universe of facts, and so your client also misapprehended that. That's correct. And later realized, oh, we had a legal defense to that change of trustee that we didn't realize, even though we had all the facts from which we could. We didn't have the fact that DTC hadn't authorized. But who knew they didn't have the fact? In other words – No, we didn't. We had an instrument that said each of the signatories has authorized to act as a holder. Now, today, can I say, somebody looked at that and said, that's the most significant fact. No, at the time. Today, it's a significant fact. The instrument itself said that a DTC authorization had been obtained by each of these holders, which wasn't true then. It was true for some of them later. But you're not saying that anybody looked at that and either assumed or thought that it meant that they got authorization from DTC. The record is uniform among all of the witnesses whose testimony was taken about this issue, that the letters DTC were never mentioned by anybody. The one party that knew about DTC was UMB. UMB was contacted by DTC the night before it delivered the instrument to say, you need our authorization for this consent solicitation you're doing, because if you do, we need all of the following things. Right. I guess I'm just thinking about in ratification, if there's a missing fact that's legally significant, and you proceed, at some point, are you ratifying the contract because you haven't done any due diligence? You said, okay, fine, we accept that, especially in a world where there's pretty good evidence that this is often how it works. Your Honor, there isn't good evidence of that. That was unsupported assertions by two witnesses. Nobody pointed to an example of that. Well, you just told us that they were the experts in the field that you were relying on. We thought that they were, but they didn't understand this problem. The Okapi witness and the Equinity witness testified that it's industry practice, but couldn't point to one single example besides this one where that was the case. DTC is embedded in our securities markets. It's the way that our securities markets work. Several broker-dealers or beneficial owners sent emails to Okapi in this process in mid-December 2020 saying, aren't you supposed to be dealing with our broker-dealer about this? Aren't you supposed to be getting DTC? Isn't it DTC that's the authorized holder? Are you going to them? And they deflected those questions. I'm going to read you a quote from Appelstein, and you can respond. There is no New York State law that requires us to dismiss a suit just because a beneficial owner gets permission to sue from the registered holders only after filing suit. I'm aware of that quote. Yeah, respond. Why isn't that dispositive here? Because in Appelstein, the plaintiff had injury in fact. The plaintiff was a note holder that had suffered losses on its bonds. And the problem was the no-action clause under the indenture. So in Appelstein, we have one of those here. It's Section 8.6. Under Section 8.6 of the CVR Agreement, a holder themselves can't sue unless there's a whole process that's followed. In Appelstein, the no-action clause said you can't sue unless you have the holder's authorization to sue. And so there's many cases since Appelstein in the district court because of the RMVS explosion. Royal Park, which is cited in our brief, is one of them. Phoenix Light is another, which was before this court, in which the district court said, listen, that failure to get DTC's authorization to sue, you need to fix that. But it's not an Article 3 problem because you have injury in fact. So we'll let you correct that. This is very different. This is the problem in Tole. Were you appointed into a position where you can invoke this narrow exception to the Lujan standard for Article 3 jurisdiction? In those cases, the litany of cases mentioned in Sprint, the court — the tests the courts follow are — in fact, this is a case that UMB cited in its reply brief. The Brea case in the Seventh Circuit said this. If you're going to invoke representative standing, Judge Hamilton in the Seventh Circuit, if you're going to invoke representative standing, you need to show the three Lujan elements for the person you represent. And you also need to show that you represent them. And that is an Article 3 problem. That's not a capacity problem. So it's the Brea case. We'll look for that. Brea in the reply brief. It's Brea Health Services v. Eagleson, 950 F. 3rd, 378. Okay. Thank you so much, Your Honor. I would love to cover our cross-appeal for you, but I'll rest on the papers for that unless there are any questions. Thank you. Thank you. Appreciate it. Attorney Clark. Thank you. Thank you. I'd like to begin where we both began and where we're in agreement, which is why this case matters. There's two reasons I'd like to point out that this case still matters, notwithstanding the decision in the other case. And that first is the validity of the notice of default that was given on 321. The argument in the other case is even who got reconfirmation later, That notice of default on 321 wasn't effective because you, UMB, weren't the trustee when you gave it, and the notice of default has to come from the UMB. It's invalid because it should have come to inquinity. If this Court were to reverse in this case and send it back, that issue would go away, either because, as the Court was mentioning, there could have been a ratification of the appointment of UMB before that notice was given, that the conduct in December and January of announcing that UMB was appointed was ratification and made us the trustee as a matter of law. And second, even if the Court were to address only the jurisdictional question, Rule 17 would allow us to use those reconfirmations as a ratification of UMB's appointment and UMB's ability to pursue this case. And that is, by definition, retroactive because Rule 17 says ratify, and the meaning of the word ratify means to make an act valid as if it were valid from the first instance. And so this case has a potentially profound effect on the litigation going forward, and it's important for the Court to address it. If I could turn, then, to whether or not trustees are one of those historically recognized exceptions, they clearly are. Sprint recognizes, and it lists them, guardians that lead them, executors and trustees are all one of the classic cases about where a party with no injury of its own can represent a party that has injury. And in this case, there's no question that we have a party before the Court. It's materialized in the world of, in the world, meaning of fund liquidation, that has that injury in fact. The only question is who gets to represent it, us or a quinnity. That is not a jurisdictional question. It's a question of capacity. And case after case holds that, not just this Court, you know, Dover v. Hochul, but cases like Brown v. Keller, which was a trustee case, or the case involving guardians, which is called Rideau. Would that be true if a complete stranger to all of this, not somebody who thought they'd gathered the majority of the holders, but just some random bank files a suit and they identify themselves as trustee? Is that a standing problem, or is that also a capacity problem? It's a pure capacity problem. Now, that might be Rule 11. It might be dismissible at the Court's own spontaneous determination under Steele Company. But it's simply not a question of jurisdiction, because there's a case or controversy, because there's people there who are injured, who are seeking relief, and who are entitled to relief, and who would get that remedy. It's just there isn't that disconnect that would exist if you didn't have that underlying people, the underlying group that was injured and wants relief. If I could talk really quickly to the discussion of what UMB had done. And it's this. The key point here is that, remember, UMB isn't a party to this contract. The parties to the contract are Equinity and Bristol-Myers. Let me just stop, because we are running. We do have a long day, so I'm going to give you, like, 20 more seconds. Okay. So finally, in terms of whether or not there was contractual ratification, I would point the Court to Restatement 246 and 84, which says you don't have to know the legal consequences of your decision, but accepting the performance without objection can be enough. And in terms of the sophistication of those doing the accepting here, the Court turns to Joint Appendix 344. If you look at the two line at the top, Mr. Clark himself is involved and is in these conversations. Thank you very much. Bye-bye. I appreciate it. Thank you both. I'll argue them both sides, and we will take it under advisement. Thank you, Your Honor.